UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DENNIS COOPER,

        Plaintiff,                           Hon. Ellen S. Carmody

v.

                                            Case No. 1:13-cv-1333

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

## **OPINION**

        This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. On March 19, 2014, the parties agreed to proceed in this Court for all further proceedings, including an order of final judgment. (Dkt. #8). Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. For the reasons stated below, the Court concludes that the Commissioner's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**.

1

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial

interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 45 years of age on his alleged disability onset date. (Tr. 144). He successfully completed high school and worked previously as a production machine tender. (Tr. 29, 74). Plaintiff applied for benefits on November 4, 2010, alleging that he had been disabled since April 14, 2010, due to depression and pain in his right shoulder, neck, and back. (Tr. 142-45, 165). Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 80-141). On June 21, 2012, Plaintiff appeared before ALJ Mario Silva with testimony being offered by Plaintiff and a vocational expert. (Tr. 38-79). In a written decision dated July 23, 2012, the ALJ determined that Plaintiff was not disabled. (Tr. 14-30). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 1-5). Plaintiff subsequently initiated this pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

Plaintiff previously filed a claim for benefits in July 2007. (Tr. 15). This claim was denied, following an administrative hearing, on April 13, 2010. (Tr. 15). ALJ Silva determined that res judicata precluded him from considering Plaintiff's previous application for benefits. (Tr. 15). Accordingly, the ALJ concluded that the present decision "shall only consider the period subsequent to the April 13, 2010 denial through the date of this decision or the claimant's date last insured."

(Tr. 15). Plaintiff has not challenged this particular determination.

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffers from: (1) cervical osteoarthritis; (2) bilateral shoulder osteoarthritis status post right shoulder stabilization arthroscopic surgery; (3) a dysthymic disorder; and (4) an anxiety disorder, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 17-22).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform sedentary work subject to the following limitations: (1) he can only occasionally climb ramps and stairs, but can never kneel, crouch, or crawl; (2) he can only occasionally rotate or flex his neck; (3) he can never reach overhead; (4) he can frequently perform handling and fingering activities; (5) he requires work that is performed on even terrain and at bench levels; (6) he must avoid moderate exposure to dangerous moving machinery and unprotected heights; (7) he is limited to simple routine tasks; (8) he cannot perform work requiring directing others, abstract thought, or planning; (9) he is limited to work involving simple decisions and workplace changes; and (10) he can only occasionally interact with supervisors, co-workers, and the general public. (Tr. 22).

The ALJ found that Plaintiff could not perform his past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a

5

vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here as the ALJ questioned a vocational expert.

The vocational expert asserted that there existed approximately 3,600 jobs in the state of Michigan, and 110,000 nationally, which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 73-76). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006). The ALJ concluded, therefore, that Plaintiff was not entitled to disability benefits.

**I.         Dr. Ziebarth's Opinion**

On August 27, 2011, Laura Ziebarth, Ph.D. completed a Mental Residual Functional Capacity Questionnaire regarding Plaintiff's impairments. (Tr. 312-16). Ziebarth rated Plaintiff's abilities in various "aptitudes." With respect to Plaintiff's "mental abilities and aptitudes needed to do unskilled work," the doctor rated Plaintiff's abilities in sixteen separate areas. (Tr. 314). Ziebarth reported that Plaintiff possessed "no useful ability to function" in one area, was "unable to meet

6

competitive standards" in five areas, was "seriously limited, but not precluded" in three areas, and was "limited but satisfactory" in seven areas. (Tr. 314).

With respect to Plaintiff's "mental abilities and aptitudes needed to do semiskilled and skilled work," the doctor rated Plaintiff's abilities in four separate areas. (Tr. 315). The doctor reported that Plaintiff was "unable to meet competitive standards" in one area, was "seriously limited, but not precluded" in two areas, and was "limited but satisfactory" in one area. (Tr. 315).

With respect to Plaintiff's "mental abilities and aptitude needed to do particular types of jobs," the doctor rated Plaintiff's abilities in five separate areas. (Tr. 315). Specifically, the doctor rated as "limited but satisfactory" Plaintiff's abilities in the following areas: (1) interact appropriately with the general public; (2) maintain socially appropriate behavior; (3) adhere to basic standards of neatness and cleanliness; (4) travel in unfamiliar place; and (5) use public transportation. (Tr. 315). On May 31, 2012, Dr. Ziebarth completed a second Mental Residual Functional Capacity Questionnaire in which she reported that Plaintiff's ability to function was even more limited. (Tr. 453-57). The ALJ afforded "little weight" to Dr. Ziebarth's opinions. (Tr. 27). Plaintiff argues that he is entitled to relief because the ALJ failed to articulate good reasons for his decision to afford less than controlling weight to Ziebarth's opinions.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Commissioner of*

*Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Gayheart*, 710 F.3d at 376-77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such. *Id.* at 376. In doing so, the ALJ must

8

consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007).

In discounting Dr. Ziebarth's opinion, the ALJ first observed that the doctor's opinions "appear to be based in large part on [Plaintiff's] subjective allegations of ongoing pain, which is outside the doctor's area of expertise." (Tr. 27). The form that Dr. Ziebarth completed required that the doctor "describe the clinical findings" that support her opinion. (Tr. 312). Dr. Ziebarth did not identify any clinical findings in support of her opinion, but instead stated that Plaintiff "reports extreme pain" and "mental distress." (Tr. 312, 453). Thus, the ALJ was justified in concluding that Dr. Ziebarth's opinions appear to be based on Plaintiff's subjective allegations.

Moreover, the medical evidence does not support Plaintiff's allegations of physical pain. On May 14, 2010, Plaintiff reported to his doctor that "he was not interested in any type of physical therapy." (Tr. 281). A May 17, 2010 MRI of Plaintiff's cervical spine revealed "minimal cervical disk disease" with "no cord compression or signal alteration." (Tr. 236-37). The results of a June 11, 2010 EMG examination were "normal" with "no evidence" of peripheral nerve entrapment, polyperipheral neuropathy, cervical radiculopathy, or lumbar radiculopathy. (Tr. 228-29). Treatment notes dated August 27, 2010, indicate that Plaintiff's neck was "neurologically stable." (Tr. 235). The results of a November 12, 2010, neurological examination were

unremarkable. (Tr. 242-44). Treatment notes dated December 1, 2010, indicate that Plaintiff's "clinical presentation exceeds objective findings on diagnostic studies." (Tr. 258). Thus, the ALJ was justified in observing that Ziebarth, because she is "a clinical psychologist, not a medical doctor," lacks the expertise to evaluate Plaintiff's subjective allegations of physical pain.

The ALJ also put little weight in Dr. Ziebarth's observation that her opinions were supported by Plaintiff's failure to make progress in therapy. (Tr. 453). As the ALJ observed, Ziebarth herself reported that Plaintiff was attending therapy "infrequently." (Tr. 252). Ziebarth also observed that "little therapy can be done when [Plaintiff] comes only 2-3 x year." (Tr. 449). On the other hand, the record contains evidence that when Plaintiff pursues treatment and complies therewith he is able to function at a level consistent with the ALJ's RFC determination. For example, treatment notes dated May 19, 2011, indicate that Plaintiff was taking his prescribed medications and that, as a result, his mood was improved and he was sleeping better. (Tr. 308). Treatment notes dated November 7, 2011, indicate that Plaintiff was taking his medications and was "doing better." (Tr. 441). Treatment notes dated January 11, 2012, indicate that Plaintiff was experiencing "significant improvement" on his current medication regimen. (Tr. 438).

In sum, the ALJ's decision to afford little weight to Dr. Ziebarth's opinion is consistent with the aforementioned legal standard and is supported by substantial evidence.

II.        **The Opinion of the Physician's Assistant**

On August 12, 2011, an unidentified physician's assistant completed a form concerning Plaintiff's ability to perform physical activities. (Tr. 299-302). While the limitations articulated by the physician's assistant were largely consistent with the ALJ's RFC determination,

the physician's assistant disagreed with the ALJ in one significant respect. As noted above, the ALJ concluded that Plaintiff was capable of performing sedentary work, the definition of which includes the ability to stand/walk for two hours and sit for six hours during an 8-hour workday. The physician's assistant, however, reported that during an 8-hour workday, Plaintiff can sit, stand, and walk for only one hour each. (Tr. 299). The ALJ afforded "little" weight to this assessment. (Tr. 26). Plaintiff asserts that he is entitled to relief because the ALJ improperly assessed the opinion in question.

The requirement that an ALJ articulate "good reasons" for affording less than controlling weight to a care provider's opinion only applies to opinions rendered by acceptable medical sources. *See, e.g., Smith v. Commissioner of Social Security*, 482 F.3d 873, 876 (6th Cir. 2007). A physician's assistant, however, is not considered an acceptable medical source. *See* 20 C.F.R. §§ 404.1502; 404.1513(a); *Dykes v. Colvin*, 2014 WL 585319 at *3 (W.D. Ky., Feb. 13, 2014). Nevertheless, physician's assistants and other unacceptable medical sources, are permitted to offer statements regarding "the severity of [a claimant's] impairment(s) and how [such] affects [her] ability to work." *See*, *e.g.*, 20 C.F.R. §§ 404.1513(d); 416.913(d). While such statements can never be afforded controlling weight, the ALJ must evaluate such by reference to the factors identified above. *See*, *e.g.*, *Gayheart*, 710 F.3d at 378 ("[t]he factors set forth in 20 C.F.R. § 404.1527. . .represent basic principles that apply to the consideration of all opinions from medical sources. . .who have seen the individual in their professional capacity").

In assessing the opinion in question, the ALJ first noted that such was not provided by an acceptable medical source. The form in question was clearly signed by a physician's assistant and there is no indication that any physician (or other acceptable medical source) subsequently

11

adopted or ratified the opinion in question. Plaintiff does not dispute this, but instead argues that "in today's modern medical world," a physician's assistant "may well be the only 'primary care source' that an impoverished or uninsured person might meet." The Court does not dispute the general accuracy of Plaintiff's assertion. Nevertheless, such does not negate the fact that the Social Security Administration has concluded that opinions from physician's assistants are to be evaluated differently from opinions rendered by medical doctors. Moreover, the ALJ can hardly be faulted for assessing the opinion in question pursuant to the standards articulated by the Social Security Administration. In this regard, the ALJ considered the opinion in question and determined that it was contradicted by the evidence of record. As the evidence detailed in the preceding section indicates, this conclusion is supported by substantial evidence.

**III.      Anne Kantor's Assessment**

On March 6, 2011, Plaintiff participated in a consultive examination conducted by Anne Kantor, Limited Licensed Psychologist. (Tr. 286-93). In his reply brief, Plaintiff asserts that he is entitled to relief because the ALJ improperly afforded "little" weight to Kantor's opinion. First, because Kantor examined Plaintiff on only one occasion her opinions are not entitled to any particular deference. Moreover, the Court fails to discern anything in Kantor's assessment that is inconsistent with the ALJ's RFC determination. The results of her examination were largely unremarkable. Kantor concluded that Plaintiff "is capable of understanding, remembering and carrying out instructions and making decisions regarding work-related matters." (Tr. 291). While Kantor also observed that Plaintiff "is likely to have marked difficulty interacting appropriately with others in public and in the workplace," such is adequately accounted for by the ALJ's finding that

Plaintiff can only occasionally interact with supervisors, co-workers, and the general public. Accordingly, this argument is rejected.

**IV.      Waived Arguments**

Plaintiff purports to advance two additional arguments, both of which the Court finds have been waived. First, Plaintiff, in his "statement of errors," asserts that the ALJ's decision to discount Plaintiff's credibility is not supported by substantial evidence. In the body of his pleading, however, Plaintiff fails to address or develop this argument. Accordingly, Plaintiff has waived this particular argument. *See, e.g., Porzillo v. Department of Health and Human Services*, 369 Fed. Appx. 123, 132 (Fed. Cir., Mar. 12, 2010) (claimant "waves any arguments that are not developed"); *Shaw v. AAA Engineering & Drafting, Inc.*, 213 F.3d 519, 537 n.25 (10th Cir. 2000) (arguments "superficially" developed are waived); *Financial Resources Network, Inc. v. Brown & Brown, Inc.*, 2010 WL 4806902 at *30 n.29 (D. Mass., Nov. 18, 2010) (same).

Plaintiff also argues in his brief that "the ALJ improperly played doctor and psychologist." By failing to identify any passage of the ALJ's decision, or any comment made at the administrative hearing, Plaintiff has failed to sufficiently develop this argument. The Court cannot scour the record for Plaintiff seeking out evidence in support thereof. Accordingly, Plaintiff has waived this particular argument.

## **CONCLUSION**

For the reasons articulated herein, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**. A judgment consistent with this opinion will enter.


Date:  February 18, 2015                                      /s/ Ellen S. Carmody
                                                                     ELLEN S. CARMODY
                                                                      United States Magistrate Judge